UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-13227-GAO

MAUREEN S. GENEREUX,
Plaintiff,

v.

NANCY A. BERRYHILL,[1]
Defendant.

OPINION AND ORDER
March 31, 2017

O'TOOLE, D.J.

The plaintiff, Maureen S. Genereux, appeals the denial of her application for Social Security Disability Benefits ("DIB") and Supplemental Security Income ("SSI") by the Commissioner of Social Security ("Commissioner"). Before the Court are Genereux's Motion for Judgment on the Pleadings (dkt. no. 12) and the Commissioner's Motion to Affirm the Commissioner's Decision (dkt. no. 16). After consideration of the administrative record and the parties' memoranda, the Court now affirms the Commissioner's decision because there is substantial evidence in the administrative record to support the decision.

## I.    Procedural History

The plaintiff filed applications for DIB and SSI on March 7, 2012, and March 16, 2012, respectively, alleging disability beginning February 15, 2012. (Administrative Tr. at 269–75, 276–

---

[1] Nancy A. Berryhill is now the acting commissioner of the Social Security Administration. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Berryhill is automatically substituted as the defendant in this action.

84 [hereinafter R.].)[2] On June 15, 2012, Genereux's applications were initially denied, (id. at 191–92), and were denied again upon reconsideration on December 13, 2012. (Id. at 223–28.) She then requested a hearing, (id. at 229–31), which was held before Administrative Law Judge Henry J. Hogan (the "ALJ") on January 21, 2014. (Id. at 140–73.) On February 28, 2014, the ALJ issued an unfavorable decision finding that Genereux was not disabled. (Id. at 121–37.) Genereux requested review of the ALJ's decision by the Appeals Council on April 8, 2014, (id. 119–20), but the Appeals Council denied that request on June 26, 2015. (Id. at 1–6.) This denial rendered the ALJ's decision the final decision of the Commissioner, making the case ripe for review by this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   Discussion

An individual may seek judicial review of a final decision by the Commissioner within sixty days of the decision. 42 U.S.C. § 405(g). Judicial review is restricted "to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). A court will uphold an ALJ's decision when it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence exists where "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted). If supported by substantial evidence, this Court must uphold the Commissioner's decision "even if the record arguably could justify a different conclusion," Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (citing Lizotte

---

[2] The administrative record has been filed electronically. The record is in its original paper form, with the page numbers in the lower right-hand corner of each page. Citations to the record are to the pages as originally numbered, rather than to numbering supplied by the electronic docket.

v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981)), for "factual inferences, credibility determinations, and resolutions of conflicts in the evidence are reserved to the Commissioner." Conte v. McMahon, 472 F. Supp. 2d 39, 46 (D. Mass. 2007) (citing Ortiz, 955 F.2d at 769). Further, the ALJ may rely upon findings and opinions of multiple physicians to determine medical facts. Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987).

In her Motion for Judgment on the Pleadings, Genereux argues that the ALJ failed to properly weigh the opinions of the medical sources in the record. Specifically, she challenges the ALJ's assessment of Dr. Rachel Gross' opinion, and she also asserts that the ALJ should not have relied on the two opinions of the non-treating state agency medical reviewers. Additionally, Genereux alleges that the ALJ erred in determining that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible because they were inconsistent with the residual functional capacity assessment.

The full and extensive administrative record is filed on the docket in this case, as is the written decision of the ALJ. There is no reason to restate the details of Genereux's medical history or of the application process except as necessary to discuss the specific objections made to the Commissioner's decision.

A.     Weight of the Medical Opinion Evidence

i.     *Dr. Gross' Opinion*

Genereux alleges that the ALJ erred when he did not afford the opinion of a treating physician, Dr. Gross, controlling weight. On October 14, 2013, the plaintiff's rheumatologist, Dr. Gross, completed a Lupus Impairment Questionnaire. (R. at 743–49.) In that questionnaire, Dr. Gross stated that Genereux was able to sit for six hours in an eight-hour workday, stand or walk

for two hours in an eight-hour workday, frequently lift up to five pounds and occasionally lift and carry up to twenty pounds, but she could not kneel, bend, or stoop. (Id. at 746–48.) Dr. Gross also opined that the plaintiff would sometimes need to take two to three unscheduled breaks lasting between fifteen and thirty minutes during an eight-hour workday. (Id. at 748.) Finally, Dr. Gross stated that Genereux would likely have one unexpected absence from work a month due to flare-ups in her symptoms. (Id.) According to the testimony of the vocational expert, this combination of limits would make Genereux unable to perform her past relevant work as a credit manager, which would support a finding of disability. (See id. at 171.)

An ALJ is required to give a treating physician's opinion controlling weight only if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the medical record. 20 C.F.R. § 404.1527(c)(2).[3] If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, the ALJ must consider the following factors in deciding what weight that opinion deserves: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence in support of the medical opinion; (4) the consistency of the medical opinions reflected in the record as a whole; (5) whether the medical provider is a specialist in the area in which she renders her opinions; and (6) any other factors which tend to support or contradict the opinion. Id. at §§ 404.1527(c)(2)(i)–(ii), (c)(3)–(6). As long as the ALJ's decision "makes clear that he considered the factors . . . [he is] not required to expressly mention each factor" when determining how much weight to afford each opinion. McNelley v. Colvin, No. 15-1871, 2016 WL 2941714, at *2 (1st Cir. Apr. 28, 2016).

---

[3] Although separate statutes and regulations exist for DIB and SSI claims, the legal standards are essentially the same. Citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.

Here, the ALJ's reasoning was sufficiently clear even though he did not specifically discuss every factor referenced in the regulation in his decision.

The ALJ properly followed the regulatory requirements when he assigned "little weight" to the opinion of Dr. Gross. (See R. at 132.) The ALJ explained that he gave little weight to the opinion of Dr. Gross, instead of controlling weight, because: Dr. Gross relied heavily on the plaintiff's subjective report of symptoms and limitations and uncritically accepted them; Dr. Gross only met with the plaintiff on an infrequent basis; and the opinion contrasts sharply with other evidence in the record. (Id.)

First, the ALJ determined that Dr. Gross' opinion was primarily based on Genereux's subjective complaints about her symptoms rather than on actual medical findings. In support of this finding, the ALJ referred to inconsistencies between Dr. Gross' treatment records and the opinion submitted by Dr. Gross.[4] The ALJ is entitled to reject a treating source's opinion if he determines that the opinion is based on the claimant's subjective statements about her condition and not objective medical evidence. See Colon v. Astrue, No. 11-30078-GAO, 2012 WL 4106764, at *5 (D. Mass. Sept. 19, 2012).

Next, the ALJ found that Dr. Gross treated Genereux infrequently. (R. at 132.) The records indicate that Dr. Gross met with Genereux every three to four months from November 19, 2012, to September 16, 2013, for a total of five treatments. (Id. at 701–05, 712–15, 719–22, 761–64, 765–68.) The ALJ was entitled to take into account the number and spacing of visits when

---

[4] For example, Dr. Gross' medical notes indicate that Genereux had a "normal range of motion" in her neck with some pain on rotation, which does not correspond with her conclusions about the limitations in the impairment questionnaire. (Id. at 763, 767, 771; see id. at 742–49.) Also, in Dr. Gross' impairment questionnaire, she marked that Genereux has oral ulcers, (id. at 743), however, none of her examination reports note finding any oral ulcers. (Id. at 762, 766, 771, 775, 779.) Dr. Gross' questionnaire also reported ankle swelling, (id. at 746), even though her treatment notes recorded only a trace lower extremity edema. (Id. at 763, 767, 771.)

assessing Dr. Gross' opinion. See 20 C.F.R. § 404.1527(c)(2)(i) (stating that "[w]hen the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight"). It is also notable that Genereux's treating physician, Dr. John Malipi, who treated Genereux more frequently and over a longer period, considered himself unable to opine on the claimant's work capacity without further evaluation. (R. at 840–47.)

Finally, the ALJ determined that Dr. Gross' opinion was not consistent with other evidence in the record. (Id. at 132.) An ALJ is entitled to limit the importance given to a treating physician's opinion where it is internally inconsistent or inconsistent with other medical evidence in the record. Arruda v. Barnhart, 314 F. Supp. 2d 52, 72 (D. Mass. 2004). The ALJ, not the court, is responsible for resolving any inconsistencies between a treating physician's opinion and other evidence in the record. Lee v. Astrue, Civil Action No. 10-10708-DJC, 2011 WL 2748463, at *11 (D. Mass. July 14, 2011) (citations omitted).

The Commissioner points out several inconsistencies between Dr. Gross' opinion and the treatment notes submitted by Genereux's other treating physicians. First, at her last visit with Dr. Hannah Yamin in August 2013, Genereux reported to be "feeling fairly well" and that she was feeling less fatigued while on a medication called Plaquenil. (R. at 755–56.) Dr. Alan R. Murphy found that Genereux had minor symptoms and those issues could be treated with "[o]ngoing conservative modalities." (Id. at 674.) Similarly, Dr. Clayland Cox reported normal findings and only recommended a minor treatment plan. (See id. at 718.) Finally, Dr. Mapili, who declined to issue an opinion on Genereux's functional abilities, did not note any neck or back pain in two of the most recent treatment sessions in September and November of 2013. (Id. at 829–38.) The ALJ

also noted that the conservative treatment plans provided by these doctors also supports the determination not to give Dr. Gross' opinion full weight. (See id. at 674, 679, 717–18, 722.)

In addition to the inconsistencies between Dr. Gross' opinion and the other medical records, the ALJ also noted that his decision not to afford Dr. Gross' opinion full weight was supported by the existence of internal inconsistencies between Dr. Gross' treatment notes and her own opinion.[5] After considering the inconsistencies discussed above, the ALJ decided not to afford controlling weight to Dr. Gross' opinion, which he was entitled to do.[6] See Lee, 2011 WL 2748463, at *11.

In sum, the ALJ properly considered the relevant factors when making his decision to not afford Dr. Gross' opinion controlling weight, and this decision is supported by substantial evidence in the record. Although the ALJ's determination may not be the only conclusion which could have been reached based on the evidence in the record, the ALJ is responsible for resolving conflicts in the record, not the courts. See Ortiz, 955 F.2d at 769. Because the ALJ relied on substantial evidence in the record, this Court will affirm his decision regarding the weight afforded to Dr. Gross' opinion. See Baez Velez v. Sec'y of Health & Human Servs., 993 F.2d 1530, at *7 (1st Cir. 1993) (per curiam) (unpublished table decision) (citing Rodriguez Pagan, 819 F.2d at 3).

ii.    Dr. Barbara Trockman and Dr. Richard Goulding's Opinions

In making his decision about whether Genereux was disabled, the ALJ relied, in part, on the opinions of two non-treating physicians employed by the State Disability Determination

---

[5] Some of these internal inconsistencies are discussed at supra note 5.

[6] Although the ALJ did not give Dr. Gross' opinion controlling weight, it is important to note that the ALJ did concur with a significant amount of her opinion as it related to Genereux's physical limitations and the "sedentary" RFC finding. (Compare id. at 129, with id. at 746–48.) The main difference between the two is that ALJ did not agree that Genereux would need to take two to three unscheduled breaks throughout the workday. (Id.)

Services ("DDS"). These physicians, Dr. Trockman and Dr. Goulding, both found that Genereux was not disabled. (R. at 174–89, 192–211.) The ALJ afforded these opinions "some weight" because their findings were supported and corroborated by other evidence in the record, including minimal objective findings, (see id. at 130–32), conservative treatment plans that were successful in treating or controlling symptoms, (see id. at 131), and Genereux's significant daily activities. (See id. at 131.) The ALJ was entitled to rely, in part, on the opinions of the two DDS physicians to justify his findings because these opinions were supported by the evidence in the record. See SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996) (stating that the opinions of state consultants can be given weight as long as those opinions are supported by evidence in the record).

Genereux also alleges that the ALJ erred in giving any weight to the two DDS opinions because they were based on an incomplete record. Genereux supports this claim by stating that both opinions were issued before Dr. Gross submitted her opinion. However, the ALJ acknowledged that the two DDS physicians did not have the opportunity to review certain medical evidence and hearing testimony before issuing their opinions, which is why he discounted the significance of the two DDS opinions. (See R. at 132 ("These medical consultants did not have the benefit of considering the additional evidence . . . . Therefore, the residual functional capacity determined herein takes into account the benign objective findings but also generously considers the claimant's subjective complaints.").)

An ALJ is entitled to rely on older medical records when the newer evidence does not show a significant change in the claimant's condition or limitations. See Abubakar v. Astrue, No. 11-10456, 2012 WL 957623-DJC, at *12–13 (D. Mass. Mar. 21, 2012). Here, the ALJ determined that there was evidence that Genereux's condition and limitations had apparently improved as the result of treatment and medications provided to her since the date of the DDS opinions. (See R. at

756, 761, 763.) The ALJ also pointed to Genereux's extensive daily activities, which he reasoned demonstrated that her symptoms were not disabling. (Id. at 131.)

It is also important to note that the ALJ did not rely solely on the DDS opinions to reach his decision. Rather, he took relevant facts and information from the findings and opinions of several physicians, which is proper. See Evangelista, 826 F.2d at 144.

Accordingly, there was no reversible error in relying, in part, on the DDS physicians' opinions, which the ALJ found to be supported by other evidence in the record, even though those opinions were issued based on a partially incomplete evidence record. See Abubakar, 2012 WL 957623, at *12–13. Although this determination may not be the only conclusion that could have been reached based on the evidence in the record, the ALJ is responsible for resolving conflicts in the record, not the courts, and so his decision is afforded deference. See Ortiz, 955 F.2d at 769 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

B.      Assessment of Genereux's Credibility

Genereux also argues that the ALJ erred in assessing her credibility when he found that her statements concerning the intensity, persistence, and limiting effects of her symptoms were "not credible to the extent they are inconsistent with the residual functional capacity assessment." (R. at 130.) Assessments of a claimant's credibility are the responsibility of the ALJ. Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965) (citation omitted). Because the ALJ has the opportunity to observe the claimant, evaluate her demeanor, and consider how her testimony fits within the rest of the evidence, the ALJ's credibility determination is "entitled to deference, especially when supported by specific findings." Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). The ALJ has discretion to make an unfavorable credibility determination as long as he considers the claimant's subjective complaints and explains his reasons

for rejecting them. Id. A court "may overturn an ALJ's credibility determination only when it concludes that the ALJ has ignored evidence, misapplied the law or judged medical matters that should be left to experts." Silvia v. Colvin, No. 13-11681-DJC, 2014 WL 4772210, at *7 (D. Mass. Sept. 22, 2014).

When evaluating the claimant's credibility, the ALJ must consider all of the available evidence, including objective medical evidence, opinion medical evidence, and the claimants own statements about their condition. See SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). The ALJ is also allowed to consider other factors including: "(1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors; (3) type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and (6) the claimant's daily activities." See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 28–29 (1st Cir. 1986); SSR 96-7p, 1996 WL 374186, at *3. Although the ALJ is required to consider these factors, he is not required to discuss each one in his decision. Silvia, 2014 WL 4772210, at *6.

Genereux's assertion that the ALJ improperly assessed her credibility is unpersuasive. The ALJ observed Genereux in person and concluded that, to the extent she testified to limitations greater than the ALJ found, her testimony was not credible. The ALJ supported his credibility finding by referencing several factors that influenced his decision including objective medical evidence, the lack of opinion about her ability to function by her treating physician, her doctors' pursuit of conservative and routine treatment plans, her significant daily activities, and her failure to pursue a recommended treatment. (R. at 131–32.)

First, the ALJ relied on objective medical evidence to support his credibility determination. (Id. at 130.) Although he reviewed the entire record, the ALJ's decision particularly focused on a

January 9, 2012, physical examination and a January 24, 2012, MRI. The physical examination noted that Genereux was not in acute distress, had full range of motion in the lumbar spine, had pain with rotation at the waist, and had a decreased range of motion in the upper extremities and cervical spine. (Id. at 130, 471.) This examination also showed that Genereux did not have any arthritic changes and that she had a full range of motion and normal strength in her lower extremities. (Id. at 471.) The findings from this physical examination were consistent with the January 24, 2012, MRI of the cervical spine. (Id. at 130, 668–69.) After reviewing the MRI, Dr. Murphy, one of Genereux's treating physicians, diagnosed cervicalgia, and he recommended "[o]ngoing conservative modalities," like physical therapy, instead of surgical intervention. (Id. at 674.) The ALJ ultimately concluded that "[w]ith mild findings like these prevalent in the record, there is no basis to support the level of limitation alleged." (Id. at 130.)

While there are findings relating to Genereux's physical limitations, the ALJ found that the medical records as a whole suggest relatively normal physical and neurological examinations. (Id. at 130–31.) Genereux argues that the ALJ is not allowed to "cherry-pick out some of the normal findings and ignore the evidence that supports Ms. Genereux's allegations and the opinions from [Dr. Gross]." (Pl.'s Mem. of Law in Supp. of Her Mot. for J. on the Pleadings 16 (dkt. no. 13).) However, as discussed above, the ALJ did not err in affording Dr. Gross' opinion less than controlling weight, and the ALJ was entitled to combine relevant information from the various medical opinions and reports that are part of the record. See Evangelista, 826 F.2d at 144.

Next, the ALJ noted that Genereux's treating physician, Dr. Mapili, never placed any restrictions on her in any of the records, and, in his impairment questionnaire, he said that he could not opine on her ability to function, despite treating her from 2010 to 2013. (R. 132, 840–47.) Genereux argues that Dr. Gross did offer an opinion about her limitations and inability to work,

and that should carry some weight. However, that opinion was weighed by the ALJ and afforded little weight. (Id. at 132.) That was a decision the ALJ was entitled to make.

Third, the ALJ considered the fact that Genereux's treating physicians only recommended conservative forms of treatment. For example, the ALJ noted that Genereux was not proscribed a narcotic or other form of pain management, and instead was prescribed ibuprofen and a muscle relaxant, which controlled her symptoms. (Id. at 131.) Also, with respect to Genereux's neck and back pain, the neurosurgeon did not believe that surgery was required, and instead recommended "[o]ngoing conservative modalities, including physical therapy." (Id. at 674.) Finally, treating physicians' notes indicate that Genereux's connective tissue and autoimmune disease responded well to the medication and treatment proscribed. (Id. at 756, 761, 763, 767). An ALJ is entitled to consider the claimant's conservative treatment plan and how the claimant's condition has responded to that treatment as part of the analysis of a claimant's credibility concerning the intensity, persistence, and limiting effects of her symptoms. See Blackette v. Colvin, 52 F. Supp. 3d 101, 120–21 (D. Mass. 2014).

The ALJ also considered Genereux's daily activities as a factor in his credibility assessment. The decision references many activities, including: "driving her husband to work, driving her children to school, cooking, cleaning, doing laundry, running errands, doing yard work, grocery shopping, visiting with friends, dining out, attending church, doing puzzles and watching television." (R. at 131.) The ALJ concluded that "[a]n individual with [Genereux's] stated pain profile would not reasonably be expected to perform this wide array of daily activities." (Id.)

During the hearing, Genereux reported that she had experienced a reduction in daily activities and that she had limitations while vacuuming, cooking, doing laundry, grocery shopping, walking more than a couple of blocks, or lifting more than ten pounds. (Id. at 152–58.) After

listening to Genereux describe her daily activities, the ALJ noted two factors that weighed against accepting these claims. First, the ALJ observed that these statements about limited daily activities could not be objectively verified. (Id. at 131.) Second, even assuming that Genereux's activities actually are as limited as claimed, the ALJ determined that "it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons," based on the medical evidence presented. (Id. at 131–32.)

The Commissioner asserts that the ALJ properly considered Genereux's daily activities in making his credibility finding, and she supports this proposition by citing Teixeira v. Astrue, 755 F. Supp. 2d 340, 347 (D. Mass. 2010). In Teixeira, the court stated that "[w]hile a claimant's performance of household chores or the like ought not to be equated to an ability to participate effectively in the workforce, evidence of daily activities can be used to support a negative credibility finding." Id. Genereux argues that her ability to perform insignificant activities does not contradict her disability claim. However, when determining Genereux's credibility, the ALJ was entitled to consider the claimant's daily activities, and he properly found more convincing the factors that weighed against considering the alleged limitations. See Sanchez v. Colvin, No. 14-12317-WGY, 2015 WL 5698413, at *8 n.6 (D. Mass. Sept. 28, 2015).

Finally, the ALJ also considered Genereux's failure to pursue a recommended conservative treatment. (R. at 131.) Specifically, the ALJ noted that Genereux never followed up on a referral to physical therapy, and the ALJ believed that "her failure to do so casts doubt on the alleged magnitude and frequency of pain." (Id.) Genereux argues that this was improper because the ALJ failed to consider that she was unable to afford physical therapy.

When assessing a claimant's failure to pursue recommended treatment, the ALJ must consider "possible reasons he or she may not . . . seek treatment consistent with the degree of his

or her complaints," including whether the individual can afford treatment. SSR 16-3p, 2016 WL 1119029, *8–9 (Mar. 16, 2016). The Commissioner asserts that affordability was not actually an issue, and supports that position by noting that she was able to afford her other treatments, took a vacation to Florida, and bought a dog. (R. at 155, 755, 761.)

The point is a small one. Genereux is correct that if he was inclined to rely on her failure to seek physical therapy, the ALJ should have developed the evidence on that score. However, from his detailed explanation of his reasons for his ultimate finding, there is little doubt he would have decided the case the same way if he had not considered the claimant's failure to get some physical therapy for her cervicalgia. In the context of the evidence as a whole and his stated reasoning, the ALJ's observation about physical therapy was more rhetorical padding than illegitimate reliance on a speculative fact.

In sum, the ALJ considered Genereux's complaints and provided a detailed explanation, based on substantial evidence in the record, as to why he made an unfavorable credibility determination. Because the ALJ supported his credibility decision with specific findings from the record, and he did not ignore evidence, misapply the law, or judge medical matters, his decision is entitled to deference and this court will not overturn his decision. See Frustaglia, 829 F.2d at 195; Silvia, 2014 WL 4772210, at *6–7.

**III.    Conclusion**

For all the reasons stated herein, Genereux's Motion for Judgment on the Pleadings (dkt. no. 12) is DENIED, and the Commissioner's Motion to Affirm the Commissioner's Decision (dkt. no. 16) is GRANTED.

The decision of the Commissioner is AFFIRMED.

It is SO ORDERED.

 /s/ George A. O'Toole, Jr.
United States District Judge